NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0050n.06
Filed: January 18, 2006

No. 04-6099

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,      )
                               )      ON APPEAL FROM THE UNITED STATES
        Plaintiff-Appellee,    )      DISTRICT COURT FOR THE EASTERN
                               )      DISTRICT OF TENNESSEE
            v.                 )
                               )
ERNEST P. MICCICHE,            )
                               )
        Defendant-Appellant.   )
_____

BEFORE: COOK and GRIFFIN, Circuit Judges; and TARNOW, District Judge.[*]

        PER CURIAM.

        Defendant Ernest P. Micciche appeals the denial of his motion to withdraw a guilty plea

entered in the district court to six counts of bank fraud in violation of 18 U.S.C. § 1344, one count

of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and eight counts of

substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I). Micciche argues that

the district court (1) erroneously denied his motion to withdraw his guilty plea, (2) improperly

denied his motion to change venue, and (3) inappropriately sentenced him in violation of the

---

        [*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of
Michigan, sitting by designation.

Supreme Court's decisions in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). We disagree and affirm.

I.

The indictment governing this case reflects the following facts.[1] Defendant Ernest P. Micciche is a former resident of Philadelphia, Pennsylvania, who obtained a degree in business administration from the Wharton School of Business at the University of Pennsylvania. Using that background, Micciche became involved in a complex conspiracy designed to defraud AmSouth Bank ("AmSouth" or "the Bank") out of millions of dollars using the following five separate entities.

First, Micciche was a minority stockholder and the chief financial officer of Certified Environmental Group ("Certified"), located in Berlin, New Jersey. Certified was, at times, in the business of providing environmental and ecological services, including training, abatement, and testing. Second, Micciche became involved with the Philadelphia, Pennsylvania, based company of Environmental Realty Guild of America, Inc. ("ERGA"), which, during the pertinent period, was primarily involved in asbestos removal. Third, Micciche used the defunct Philadelphia, Pennsylvania, company, Keystone Wallpaper Sales, Inc. ("Keystone"), to effectuate defrauding AmSouth. Fourth, along with three of his co-defendants, Micciche incorporated Management

---

[1]Micciche pled guilty to all counts of which he was charged, without the benefit of a plea agreement. In conjunction with Micciche's plea, the government filed a factual basis for the plea.

Investors, Inc. ("Management"), in Voorhees, New Jersey.[2] During the conspiracy period, Management provided no services and performed no work.

Finally, Micciche utilized Alpha Financial Services ("Alpha"), owned by two of Micciche's co-defendants, to facilitate the conspiracy. Incorporated in Tennessee and headquartered in Collegedale, Alpha was engaged in the business of obtaining money for companies in need of short-term financing. To do so, Alpha used its customers' accounts receivable, verified by invoices, as collateral and a line of credit with AmSouth. At one time, Alpha had a credit line of more than $20 million with AmSouth.

Beginning in or about June 1999, Micciche and four co-defendants devised a scheme to defraud AmSouth, a federally insured financial institution. Ordinarily, in order to obtain money from AmSouth, Alpha's customers would submit to Alpha an invoice to be used as collateral for AmSouth advances. Alpha would then, on a daily basis, summarize the total dollar value of its customers' invoices and fax that summary to AmSouth. In response, AmSouth would typically wire eighty percent of the invoices' face value directly to Alpha's customers, who were obligated to repay the funds within ninety days. AmSouth charged Alpha interest based on Alpha's total line of credit and, if unpaid after ninety days, Alpha was obligated to repay any unpaid loan.

Knowing the AmSouth process, Micciche and his co-defendants would generate and submit false invoices created under the names of Certified, ERGA, Keystone, and Management to Alpha.

---

[2]Management was established in 2000 solely to extend the life of the conspiracy. As noted above, it performed no work during the conspiracy.

Alpha would, in turn, submit the false invoices to AmSouth knowing that no work had in fact been done to necessitate production of the invoices. To avoid raising suspicion, Micciche and his co-defendants would move bad debts from one company to another, while repaying AmSouth portions of the owed sums using the loaned money. Micciche's involvement in the scheme (1) utilized Keystone to submit $1,026,982.30 worth of false invoices; (2) utilized Certified to submit $1,018,728.70 worth of false invoices; (3) utilized ERGA to submit $2,731,797.60 worth of false invoices; and (4) utilized Management to submit $1,046,319.00 worth of false invoices. In total, Micciche defrauded AmSouth out of $5,823,827.60.

The conspiracy came to an end in or around January 2001, and the grand jury thereafter returned an indictment on January 16, 2003. On April 21, 2003, Micciche moved, pursuant to Federal Rule of Criminal Procedure 21(b), to change venue to New Jersey, and, in response, the court issued a memorandum opinion denying the motion on May 29, 2004. In pertinent part, the court recognized that, to resolve Micciche's motion, it must engage in the ten-factor analysis outlined by the Supreme Court in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-44 (1964). After doing so, the court concluded that "[a]ll of the factors, save perhaps Defendant's location, either weigh against transferring this case or are at least neutral on the issue." The court found particularly persuasive the fact that "the Government's witnesses and the victim in this case all reside in or near the Eastern District of Tennessee."

Micciche then pled guilty to eleven counts in the indictment, without the benefit of a plea agreement at his rearraignment on November 4, 2003. Before accepting Micciche's plea, the court

inquired into his personal background and learned (1) about Micciche's education, (2) that he has never been treated for mental illness or addiction to narcotic drugs, and (3) that Micciche was satisfied with the advice of counsel.  The court thereafter informed Micciche that, by pleading guilty, he would give up a variety of constitutional rights, including (1) the right to trial by jury, (2) the presumption of innocence, (3) the right to assistance of trial counsel, (4) the right to cross-examine witnesses at trial, (5) the right against self-incrimination, (6) the right to require the United States to prove his guilt beyond a reasonable doubt, and (7) the right to compel the attendance of witnesses to testify on his behalf.

As the clerk then began to read counts 1-11 of the indictment, counsel for Micciche interjected and requested to waive the reading.  In doing so, counsel stated as follows:  "I can assure the Court Mr. Micciche and I have gone through it numerous times in detail."  After questioning by the court, Micciche echoed his counsel's statement, noting that he had read the indictment on "many occasions" and discussed it with his attorney "on numerous occasions."  The court therefore accepted Micciche's waiver of the reading of the indictment and commenced with advising him of the elements and corresponding penalties associated with each count to which Micciche was pleading.

The clerk then took Micciche's plea individually as to each count of the indictment.  When asked how he pled to each count, Micciche said "guilty."  The court likewise asked Micciche whether he understood that if the sentence he received was more severe than he expected, he would

nonetheless be bound by the plea and would have no right to withdraw his plea. Micciche indicated that he understood.

In response to the court's additional questioning, Micciche indicated that he had read the "Factual Basis" prepared by the government and discussed it with his attorney. After the court asked "[i]s there anything at all in this factual basis for your plea that is not true insofar as you know[,]" Micciche answered "[n]o, your Honor." Finally, the court asked, "[a]re you offering to plead guilty because you are in fact guilty[,]" to which Micciche responded "[y]es, your Honor."

Roughly ten months later, Micciche moved to withdraw his guilty plea on September 2, 2004. A day later, the court held Micciche's sentencing hearing, but first considered the merits of the motion to withdraw. In denying Micciche's motion, the court noted that (1) Micciche was attempting to withdraw his guilty plea on the eve of sentencing, (2) Micciche had not offered a valid reason for failing to move for withdrawal earlier in the proceedings, (3) Micciche failed to argue actual innocence, (4) the Rule 11 hearing revealed nothing unusual about the circumstances surrounding Micciche's guilty plea, and (5) nothing about Micciche's personality suggested to the court that "he makes improvident or rush decisions." Although the court noted that Micciche had no prior experience with the criminal justice system, it nonetheless concluded that it would not be fair and just to grant Micciche's motion.

The court imposed a special assessment fee of $1,100 and ordered restitution to AmSouth in the amount of $5,059,200. Judgment was entered on September 10, 2004, and this timely appeal followed.

II.

Micciche argues that two separate "fair and just" reasons exist to support the withdrawal of his plea; specifically, (1) the change of law with regard to the United States Sentencing Guidelines, and (2) certain allegedly late-produced exculpatory evidence. On the first point, Micciche contends that he made his plea decision based on the state of the law as it existed before the Supreme Court's decisions in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). Given that the government would now have to prove its asserted loss figure beyond a reasonable doubt, Micciche asserts that it would be neither fair nor just to allow his plea to stand given that he pled guilty thinking that the government would have to prove loss by a preponderance of the evidence.

On the second point, Micciche argues that he became aware of "potentially exculpatory evidence" disclosed after his guilty plea; namely, certain "bank records reflecting financial transfers from Certified Environmental Group, Inc. and Alpha Financial Services, Inc." Micciche concludes that if he had possessed the "potentially exculpatory evidence," then "his counsel's advice would have been fundamentally different with regard to recommendation of a plea – and therefore, [he] would not have plead guilty in November of 2003."

We review for abuse of discretion a district court's decision to deny a defendant's motion to withdraw a guilty plea. *United States v. Hunt*, 205 F.3d 931, 936 (6th Cir. 2000).

We conclude that the district court did not abuse its discretion by denying Micciche's motion to withdraw his guilty plea. Significantly, "[t]he withdrawal of a guilty plea prior to sentencing is

not an absolute right but is a matter within the broad discretion of the district court." *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (internal citation and quotation marks omitted). Thus, in order to withdraw a guilty plea before sentencing, a defendant must "show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). The purpose of Rule 11(d) "is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (internal citation and quotation marks omitted).

We have previously recognized that, in deciding a defendant's motion to withdraw his guilty plea, the district court must consider a variety of factors, including (1) "whether the movant asserted a defense or whether he has consistently maintained his innocence," *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988); (2) "the length of time between the entry of the plea and the motion to withdraw," *id.*; (3) "why the grounds for withdrawal were not presented to the court at an earlier time," *id.*; (4) "the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt," *id.*; (5) "potential prejudice to the government if the motion to withdraw is granted," *id.* at 103-04; and (6) defendant's prior experience with the criminal justice system, *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998) (citation omitted). These factors "are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027; *see United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.

1991) (noting potential prejudice to the government need not be addressed unless defendant first establishes a fair and just reason for withdrawing his plea).

In this case, the district court correctly analyzed Micciche's motion. First, Micciche was attempting to withdraw his guilty plea on the eve of sentencing. *Cf. United States v. Thompson*, 680 F.2d 1145, 1151 (7th Cir. 1982) (noting motions made on the eve of sentencing hearing to withdraw a guilty plea are disfavored). Second, Micciche received word of the potentially exculpatory evidence sometime between March and May of 2004, and the Supreme Court issued its decision in *Blakely* on June 24, 2004, yet Micciche failed to move to withdraw his guilty plea until September 2, 2004. *Cf., e.g., United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) ("First, [defendant's] unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw." (citation omitted)); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (upholding district court's denial of defendant's motion because he waited approximately seventy-seven days to file his motion after entering his guilty plea); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (upholding denial of motion because defendant failed to explain sixty-seven day delay between the motion and the plea). Micciche offers no reason, valid or otherwise, for failing to move for withdrawal earlier in the proceedings.

Moreover, Micciche failed to maintain his innocence and his motion failed to argue that he was actually innocent. Indeed, Micciche admitted to the conduct charged during the plea colloquy. *Cf. United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) (affirming district court's conclusion that defendant failed to maintain his innocence because he admitted "that he did engage

in the conduct that was set forth in the government's plea colloquy").  Micciche's assertion that he would not have pled guilty had he known the sentencing laws would change soon thereafter is the quintessential example of a tactical decision rather than an attempt to avoid the consequences of "a hastily entered plea made with unsure heart and confused mind."  *Bazzi*, 94 F.3d at 1027 (internal citation and quotation marks omitted).

Finally, as the district court observed, the Rule 11 hearing revealed nothing unusual about the circumstances surrounding Micciche's guilty plea, and nothing about Micciche's personality suggested to the court that "he makes improvident or rush decisions."  Indeed, there is no dispute that Micciche was competent at the time of his plea, that he had not been coerced to plead guilty, that he read and understood English, and that he had discussed the indictment and the plea with his attorney, who, according to Micciche, had provided him with satisfactory advice.  *Cf. Valdez*, 362 F.3d at 913.[3]  For these reasons, the district court did not abuse its discretion in denying Micciche's motion to withdraw his guilty plea.

The late-disclosed "potentially exculpatory evidence" does not mandate a contrary result.  Micciche highlights that certain documents show money passing between Alpha and Certified which thereby demonstrate that illicit funds were not "obtained by his companies *directly from Amsouth bank*[.]"  Micciche, however, fails to explain the import of such a realization.  As the government

---

[3]Although the court noted that Micciche had no prior experience with the criminal justice system, it nonetheless concluded that it would not be fair and just to grant Micciche's motion.  Such a conclusion is appropriate given that, although Micciche does not have formal experience with the criminal justice system, he was intimately involved in an investigation by the Federal Trade Commission and an investigation for securities fraud by the Securities and Exchange Commission.

states, "these documents do not establish defendant's innocence. Nor do they support a conclusion that defendant would not have pled guilty had he known of their existence."

Finally, Micciche's *Blakely/Booker* argument is not to the contrary. Although he derives some significance from the fact that the government would now be required to prove any asserted loss figure beyond a reasonable doubt, that change does not alter Micciche's admission of guilt. Micciche specifically conceded the veracity of the government's "Factual Basis" for his plea, which contains a breakdown of the financial loss Micciche caused AmSouth. Indeed, in a relevant colloquy between Micciche and the court, the following transpired:

| Court: | I am looking at a document which was filed into the record on Friday. It is titled "Factual Basis for the Plea of Ernest P. Micciche." Have you seen this document, sir? |
| --- | --- |
| Defendant: | Yes, Your Honor. |
| Court: | Have you had a chance to read this document? |
| Defendant: | Yes, Your Honor. |
| Court: | Have you gone over this document with your attorney? |
| Defendant: | Yes, Your Honor. |
| Court: | Is what is contained in this document true and correct? |
| Defendant: | Yes, Your Honor. |
| Court: | Is there *anything at all* in this factual basis for your plea that is not true in so far as you know? |
| Defendant: | No, Your Honor. |
| Court: | *Are you offering to plead guilty because you are in fact guilty*? |

Defendant:     *Yes, Your Honor.*

Thus, although the court later imposed a sentence incorporating the loss figure outlined by the "Factual Basis" document, it did so only because of Micciche's admissions. The court specifically stated:

> Well, even as the Supreme Court stated in *Blakely*, a court is entitled to accept a defendant's admission. And Mr. Micciche, under oath, told me that the factual basis was true and correct. And the factual basis lists – I have not added up the figures, but we have about five or six amounts here of about $600,000. I see two – three in excess of $500,000. So it would appear to the Court that this easily exceeds the 5 million dollar[] [figure set forth in the Presentencing Report].

Given that Micciche admitted to causing a loss in excess of six million dollars, there was nothing improper about the district court's utilization of a $5,059,200 loss figure for sentencing purposes. The district court, therefore, correctly applied the preceding factors and properly determined, within its discretion, that withdrawal was inappropriate.

### III.

Micciche next asserts that the district court erroneously denied his motion to transfer venue because the criminal conduct attributed to him took place entirely in New Jersey. Micciche argues that no statute charged in this indictment provides a basis for establishing jurisdiction in the Eastern District of Tennessee. He likewise observes that his only connection with the Eastern District is Alpha, which he asserts "merely served as a 'clearinghouse' between [himself] and AmSouth Bank in Birmingham, Alabama." Finally, Micciche analyzes each of the transfer factors listed in *Platt v. Minnesota Mining & Manufacturing, Co.*, 376 U.S. 240, 243-44 (1964), and concludes that nearly

every factor weighs in favor of transfer. Thus, according to Micciche, the district court improperly denied his motion to change venue. We disagree.

We review a district court's denial of a motion to change venue for an abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005).

Federal Rule of Criminal Procedure 21(b) enables a court to transfer the proceedings, upon motion by the defendant, "for the convenience of the parties and witnesses and in the interest of justice." When evaluating the propriety of such a motion, a district court should consider (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceeding; (4) the location of relevant documents and records; (5) disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt*, 376 U.S. at 243-44.

Moreover, 18 U.S.C. § 3237 sets out the requirements for establishing venue where the offense begins in one district and is completed in another:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more that one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a) (2005).

In this case, the district court did not abuse its discretion in denying Micciche's motion to transfer venue. First, the government is correct that, by pleading guilty, Micciche waived his venue objections. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has

solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Indeed, venue is distinct from jurisdiction, *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) ("[T]he issue of venue is not a jurisdictional issue."), and, accordingly, Micciche's voluntary plea waived all non-jurisdictional errors, including his venue objections, *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) ("A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings." (citation omitted)).

Second, the district court appropriately evaluated the *Platt* factors and concluded that "[a]ll of the factors, save perhaps Defendant's location, either weigh against transferring this case or are at least neutral on the issue." In making that determination, the court properly found "particularly persuasive" the fact that the government's witnesses and the victim all reside in or near the Eastern District of Tennessee.

Finally, as the government notes, in conspiracy cases, "venue is proper in . . . any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed." *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984) (citations omitted). In this case, the indictment expressly charges Micciche with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).[4] Thus, given that overt acts in

---

[4]Moreover, money laundering charges may be prosecuted in any district where a financial transaction occurred. *See United States v. Cabrales*, 524 U.S. 1, 9 (1998). For this additional reason, the district court properly denied Micciche's motion.

furtherance of the conspiracy took place in the forum jurisdiction, Micciche's motion to transfer was

properly denied.[5]

IV.

Micciche finally argues that the court erroneously sentenced him to sixty-six months in

prison. Although Micciche concedes that he "represented to the court that the Factual Basis

regarding [his] conduct was correct during the plea colloquy[,]" he nonetheless contends that he

"maintained that his agreement with the government was that the plea was supposed to [be] based

on an 'open amount.'" Having said that, however, Micciche also concedes that his arguments are

"wholly dependent upon the outcome of the decision to allow the withdrawal of [his] guilty plea."

Micciche's final argument lacks merit. As the Court's holding in *Booker* reflects, "[a]ny fact

(other than a prior conviction) which is necessary to support a sentence exceeding the maximum

authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the

defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 125 S. Ct. 738,

756 (2005). In this case, the Factual Basis upon which Micciche's plea is based reflects that he

*admitted* to causing a loss in excess of five million dollars. Micciche informed the district court that

he read that document and discussed it with his attorney. He further affirmed the veracity of the

information contained in the Factual Basis. Finally, the court asked, "[a]re you offering to plead

---

[5]Notably, Micciche filed his motion to change venue on April 21, 2003, yet was arraigned on January 21, 2003. We have previously noted that "Rule 22 requires that a motion to transfer be made 'at or before arraignment' unless otherwise prescribed by the rules or the court." *United States v. Tremont*, 351 F.2d 144, 146 (6th Cir. 1965) (citations omitted). For this additional reason, the district court did not abuse its discretion in denying Micciche's tardy motion.

guilty because you are in fact guilty[,]" to which Micciche responded "[y]es, your Honor." Nothing

in the record suggests that Micciche's allocution was coerced or otherwise involuntary. Thus, given

that he admitted to the facts giving rise to his sentence, no *Booker* error occurred.

Affirmed.