NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0063n.06
Filed: January 28, 2009

**NO. 06-4449**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

                                    **ON APPEAL FROM THE**

v.                                   **UNITED STATES DISTRICT**
                                        **COURT FOR THE SOUTHERN**

JONNIE H. WHITE,                **DISTRICT OF OHIO**

      Defendant-Appellant.

                                         /

BEFORE:    SUHRHEINRICH, GRIFFIN, and KETHLEDGE; Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.** Defendant Jonnie White appeals following his conviction and sentence for violations of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C § 2. On appeal he argues the district court erred: 1) by not allowing him to plead guilty; 2) in assigning his offense level calculation at 38; 3) in denying him a reduction for acceptance of responsibility; 4) by making judicial factfindings at sentencing of the amount of crack cocaine; and 5) by imposing an unreasonable sentence. Lastly, he seeks a remand for resentencing based on the recent amendments to the advisory guidelines concerning the crack/powder cocaine ratio. We AFFIRM.

**I. Background**

      White was convicted by a jury on June 14, 2006, of conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2, based on his activities in the Southern District of Ohio in 2005. On October 13, 2006, White was sentenced to 293 months in prison, five years supervised release and a $200 special assessment.

**A. Pretrial Proceedings**

White retained three attorneys during the proceedings and attempted to plead guilty twice. White's first plea agreement was filed with the district court on February 16, 2006. In that agreement, White agreed to plead guilty to the conspiracy count and further agreed that the relevant conduct attributable to him as part of the conspiracy was 486.69 grams of cocaine base. This agreement also stated the government's position that White should receive a two-level enhancement for possession of a firearm in connection with the drug conspiracy pursuant to U.S.S.G. § 2D1.1(b), a two-level enhancement for possession of a firearm in connection with the drug conspiracy pursuant to U.S.S.G. § 2D1.1(b), and a two-level enhancement for having a supervisory role in the conspiracy pursuant to U.S.S.G. § 3B1.1. White reserved the right to contest those enhancements at the sentencing hearing. Finally, the plea agreement provided for a potential reduction of three offense levels for acceptance of responsibility, provided he continued to accept responsibility through sentencing.

On February 28, 2006, at the change of plea hearing, White indicated that he did not wish to go through with his guilty plea, and the written plea agreement was withdrawn. White's trial was rescheduled for April 10, 2006.

On March 22, 2006, a second plea agreement was filed. In this second agreement, White agreed to plead guilty to the conspiracy count, and agreed that the relevant conduct was 486.69 grams of cocaine base, for an offense level of 34 under the applicable advisory guideline. This time

the government did not reserve the right to produce additional evidence concerning relevant conduct or to seek enhancements for possession of a firearm or for a supervisory role.

The change of plea hearing was held the same day. White agreed to enter his guilty plea before the magistrate judge. The magistrate judge refused to accept the guilty plea however, after White indicated that he was "not really" satisfied with counsel's advice and representation because counsel was doing only what the prosecutor told him to do, and that he was pleading guilty because he felt like his attorney was not putting any real effort into his case and "fighting for my rights." White explained that the government's witness, White's girlfriend and codefendant Shawnda Cordell, would blame him for all of the drugs sold, although she was a known drug dealer before meeting White. White stated that he believed he had "some defenses."

Counsel's motion to withdraw was granted and White retained his third attorney, Tom Warshaw, who was granted leave to appear pro hac vice to represent White for trial.

**B. Trial**

Trial began on June 12, 2006. Detective Chad Wallace of the Gallipolis, Ohio Police Department testified that on March 25, 2005, he stopped a vehicle driven by White after it failed to stop at three consecutive stop signs. Cordell was a passenger. Wallace knew Cordell was on probation. As part of her probation, she was subject to search at any time. Wallace searched Cordell and the vehicle but found no drugs. Cordell was then transported to her home, 193 Windsor Drive, Gallipolis, Ohio, for a further search. There the officers found 27.44 grams of cocaine base, inside a box which was hidden in a large bag of dog food next to the refrigerator. The crack cocaine was packaged in 12 to 13 individual packets. The officers also found a small bag of crack cocaine on top of the refrigerator, a small digital scale, and $14,566 in U.S. currency. No fingerprints were found.

On July 22, 2005, Jerry Abbott, a cooperating informant, made a controlled buy of crack cocaine from Cordell. Cordell confirmed the sale, although she stated that the crack did not come from White, who was in Detroit, but from her cousin.

On July 23, 2005, at 1:30 a.m., Trooper Risner observed a vehicle traveling eastbound on U.S. 35 at an extremely slow speed. He ran a file check on the vehicle and found that it was registered to Cordell. He also determined that Cordell had an outstanding arrest warrant for a probation violation, so he made a traffic stop of her vehicle. Risner took Cordell into custody. White was a passenger. Cordell testified that she was returning with White from Detroit when she was arrested.

The police executed a search warrant on the couple's mobile home located at 2657 State Route 218, Gallia County, Ohio, on July 25, 2005. White and Cordell were present. Officers discovered 486.69 grams of cocaine base in the charcoal grill next to the back porch of the mobile home. The crack cocaine was divided into 23 individual vacuums inside a vacuum sealed package. The officers also found digital scales with crack residue, $3643 in currency, and a 9mm semi-automatic pistol, with a magazine containing 16 live rounds of ammunition. No fingerprints of any kind were found on the seized evidence.

Cordell, who was charged with White, pleaded guilty and agreed to cooperate in return for a reduced sentence. Cordell testified that she was living with White in the mobile home on July 25, 2005. She said that she had known White since October 2003, and began living with him in December 2003/January 2004. To Cordell's knowledge, White was not employed, and he traveled to and from Detroit to Gallipolis for several weeks at a time in each location.

Cordell stated that after about a year she discovered that White was selling crack. Eventually she began making deliveries of the crack to White's customers. Sometimes a customer would come to one of their residences to pick up the crack.

Cordell testified the $14,566 seized in March 2005 belonged to White and came from drug sales. She testified that the crack in the dog food bag belonged to White, as did the crack in the grill.

Three of White's crack cocaine customers also testified–Jerry Abbot and his wife Teresa, and John Rees. All three testified that they made numerous purchases from "Cash," or White, or one of his dealers.

On June 14, 2006, the jury found White guilty of one count of conspiracy to contribute cocaine base and one count of possession with intent to distribute cocaine base. The jury answered special interrogatories determining that the quantity of crack cocaine involved in both charges was at least 50 grams of cocaine base. (*Id.*)

After the jury returned the verdict, White made an obscene gesture at the jury and an obscene remark to the government attorney.

## C. Sentencing

White's presentence report (PSR) set his advisory guideline sentencing range at 292-365 months, based on an offense level of 38 and a criminal history category of III.[1] The sentencing range was based on the relevant conduct of 853.06 grams of cocaine base, which corresponded to an offense level of 36. Added to that was a two-level enhancement of White's supervisory role of Cordell and an unindicted coconspirator known as Greg.

---

[1]The 2005 edition of the U.S. Sentencing Guidelines Manual was used.

White's criminal history category was the result of one point for his 1997 conviction for speeding, obstruction, no license, giving a false name and false birth date in Cobb County Georgia; two points for a conviction of carrying a concealed weapon in 2001 in Detroit, Michigan; one point for a conviction of providing false information and drug abuse in Gallia County, Ohio; and one point for his conviction for possession of marijuana in 2004 in Gallia County; Ohio. This amounted to five criminal history points, which is a criminal history category III. In addition, the PSR listed numerous other arrests not counted for purposes of assessing criminal history points.

White filed one objection, related to his criminal history category, and requested a downward departure on the ground that category III over-represented the true nature of his criminal history.

White did not make any objections at the sentencing hearing to the factual findings in the PSR or to the guidelines range, and the district court adopted both. At sentencing White argued that the offenses were overstated based on the 100/1 crack to cocaine powder ratio and that his criminal history score over-represented the true nature of his past. The district court rejected the latter contention because of White's "rather lengthy criminal past." The court also held that it had discretion to consider the crack/powder cocaine differential, and exercised that discretion, reducing White's advisory guideline range from an offense level of 38 to 36. This reduction decreased Whites' guideline sentencing range to 235 to 293 months. (*Id*.) After reducing White's advisory guideline range two levels, the court considered the factors outlined in 18 U.S.C. § 3553(a), and sentenced White to 293 months' imprisonment.

On appeal, through new counsel, White raises several issues. White also filed a pro se supplement.

## II. Analysis

## A. Guilty Plea

White argues that the magistrate judge erred by not allowing him to plead guilty, and that he was prejudiced by an increased sentence guideline range as a result. White claims that at the plea hearing he "was adamant about pleading guilty" and that he is entitled to have his judgment set aside to proceed with the original plea agreement.

This Court has stated that "[w]hile a defendant has no absolute right to have a guilty plea accepted, a court must exercise sound discretion in determining whether or not to reject a plea. Thus, a defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea." *United States v. Moore*, 916 F.2d 1131, 1135-36 (6th Cir. 1990) (citation omitted). *See also* Fed. R. Crim. P. 11(c)(5).[2]

White contends that the applicable standard of review is abuse of discretion. *See Moore*, 916 F.2d at 1135-36. The government counters that because White did not object during the plea

---

[2]Fed R. Crim. P. 11(c)(5) provides:

**(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

**(A)** inform the parties that the court rejects the plea agreement;

**(B)** advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

**(C)** advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

colloquy after the court rejected his plea, plain error review applies. *See United States v. Page*, 520 F.3d 545, 546-47 (6th Cir. 2008) (holding that plain error standard or review applies when a defendant fails to object during his plea colloquy to the district court's alleged violation of Fed. R. Crim. P. 11(b)(1)). Under either standard, White's argument fails.

White attempted to plead guilty to the conspiracy charge on two different occasions, and two different plea agreements were filed. At the first change of plea hearing, White told the court that he wished to withdraw from the plea agreement and the court granted his request. At the second change of plea hearing before the magistrate judge, White indicated three times that he wished to plead guilty. At the same time, however, White also told the court that he was pleading guilty because he was dissatisfied with his attorney's lack of effort and that he was pleading guilty to a "lesser charge." In addition, he also made statements that he was not guilty of the crime to which he was attempting to plead guilty; never admitted that he was part of a conspiracy with Cordell, claiming she dealt drugs on her own; and denied involvement with the 486.69 grams of crack found in the trailer on July 25, 2005, which was the basis for the agreed relevant conduct in the signed plea agreement.

Further, the conspiracy count carried a mandatory minimum sentence of ten years and a potential maximum of life in prison. The second plea agreement made some non-binding recommendations concerning guidelines applications for relevant conduct, role in the offense, and possession of a firearm, but the charge White was pleading guilty to was not a lesser charge. Thus, White clearly misunderstood the nature of the offense to which he was pleading guilty. Based on the record, the magistrate judge correctly refused to accept White's guilty plea. To have done

otherwise would have been reversible error. Finally, it should be noted that White did not make any more attempts to plead guilty after his third attorney was retained.

In sum, there is no error here, plain or otherwise.

## B. Offense Level Calculation

When reviewing sentencing decisions, this Court reviews a district court's factual findings for clear error, and conclusions of law de novo. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). However, plain error analysis applies if a defendant fails to object after being given a a final opportunity to object to the sentence imposed. *United States v. Bostic*, 371 F.3d 872-73 (6th Cir. 2004).

White complains that the district court erred assigning him a base offense level of 38 for two reasons. First, he objects to the court's determination that his relevant conduct was more than 500 grams of crack cocaine. Second, he objects to the court's determination that he supervised others.

The PSR counted the following amounts of crack cocaine: 1.19 grams sold by Cordell on July 22, 2005; 486.69 grams seized from the grill on July 25, 2005; and 25 grams and $14,566, which converted to 12 ounces or 340.2 grams, seized on March 25, 2005. This added up to 853.06 grams of cocaine base, which corresponded to a base offense level 36 under the applicable guideline provision. Two levels were added for White's supervisory role over Cordell and an unidentified courier known only as Greg. The PSR did not give any reduction for acceptance of responsibility, because White was found guilty at a jury trial and declined to make a statement on his behalf.

At the sentencing hearing, the district court specifically asked White if he had any objections to the factual findings in the PSR or the PSR's conclusions as to the applicable guidelines. White had none, and the district court adopted those findings. At the conclusion of the hearing, the district

court again asked White if he had an objections to the sentence as stated. White responded that his only objections were those stated in the sentencing memorandum, which concerned requests for a downward departure based on in his criminal history category and the 100 to 1 crack/powder cocaine ratio.

We now turn to the precise objections.

## 1. Relevant Conduct

White did not object to the base offense level of 38 in either the sentencing memorandum or at the sentencing hearing. Plain error review thus applies.

At the time of White's sentencing, more than 500 grams of crack was an offense level 36. U.S.S.G. § 2D1.1(c)(2). At a minimum, the 25 grams seized in March and the 486 grams seized in July 2005 exceeded 500 grams. The evidence supported the conclusion that this crack constitutes relevant conduct. The drugs were found in residences White shared with Cordell. Although she was not aware of those particular quantities, she testified that White stored his crack in their homes before distribution. White also admitted to a cellmate following his arrest that the drugs found in the barbeque grill were his.

The government agrees with White that the controlled sale of 1.7 grams of crack by Cordell to Abbott should not have been included as relevant conduct based on Cordell's testimony that she got the drugs from another source. However, subtracting this amount does not change the base offense level or reduce the total relevant conduct below 500 grams. The $14,566 seized in the March 2005 raid was also properly converted into relevant conduct. Cordell testified that the monies belonged to White. Rees testified that White said that the lost money was just a day's profit. The testimony of the Abbotts and Rees lends additional support. Each testified that they were purchasing

-10-

8-ball quantities of crack from White at least three or four times per week on a regular basis over a period of two years.  Cordell confirmed these accounts.

In short, the district court did not err in finding that White was involved in a conspiracy to distribute and possess more than 500 grams of crack cocaine.

### 2. Supervisory Role

White also objects to the two-point enhancement for his supervisory role in the conspiracy. Again, the standard of review is plain error.  There is none here.  Section 3B1.1 of the Sentencing Guidelines provides that a defendant should receive a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity."  U.S. Sentencing Guidelines Manual § 3B1.1 (2005).  This provision clearly applies to White.  He recruited Cordell and Greg to help him distribute drugs to customers.  The record reflects that White's customers would contact him and that he would often send Cordell or Greg to deliver the drugs.  White had Cordell transport him to and from Detroit.  White revealed only a portion of the drugs to Cordell and had large amount of monies as his own.  All of these factors support the conclusion that White's role in the conspiracy warranted the enhancement given. *See* U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.4 (2005) (listing factors).

### C.  Acceptance of Responsibility

White argues that he is entitled to a two-level reduction for acceptance of responsibility under Section 3E1.1 of the Guidelines because he attempted to plead guilty prior to trial.  He further claims that he admitted his guilt at the sentencing hearing.  This argument must be rejected.  As noted above, White never admitted that he was a knowing participant in a conspiracy with Cordell to distribute in excess of 50, let alone 500 grams of crack cocaine.  During the plea hearings, White

denied any connection to the 486 grams of crack seized in the barbeque grill in July 2005. He contended that all the drugs at Cordell's house were hers, and that he "had nothing to do with that." While he admitted at sentencing that he sold drugs, he also claimed that he had not received a fair trial.

Like the defendant in *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999), White contested his factual guilt at trial, and continued to contest it after conviction. *See Mahan*, 190 F.3d at 427. Thus, as in *Mahan*, the district court did not commit clear error in declining to grant a reduction under § 3E1.1(a). *Cf.* U.S. Sentencing Guidelines Manual § 3E1.1 cmt.2 (stating that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse").

**D. Judicial Factfindings**

White claims that, in light of *United States v. Booker*, 543 U.S. 220 (2005), his relevant conduct should have been limited to 50 grams of cocaine since the special interrogatory submitted to the jury was limited to that inquiry. This contention is without merit. The two counts in the superseding indictment both alleged that an enhanced sentence under 21 U.S.C. § 841(b)(1)(A)(iii) applied. Conviction under this provision increases the potential maximum sentence from 10 years to life in prison when the offense involves "50 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii). Because the jury found in the special interrogatory beyond a reasonable doubt that the conspiracy involved at least 50 grams of crack cocaine, the district court did not violate *Booker* or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by imposing a sentence above the 10-year maximum sentence for crack cocaine offenses. This Court

-12-

has consistently held since *Booker* that district judges can make judicial factfindings under the pre-*Booker* preponderance of the evidence standard to calculate the appropriate guideline range. *See United States v. Brika*, 487 F.3d 450, 459 n.3 (6th Cir.), *cert. denied,* 128 S. Ct. 341 (2007); *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005). This Court has also held that a district court does not err in imposing a sentence based on judicially found facts so long as the sentence is at or below the statutory ceiling set by the jury's verdict. *See United States v. Sexton*, 512 F.3d 326, 330 (6th Cir.), *cert. denied*, 129 S. Ct. 304 (2008); *United States v. Zidell*, 323 F.3d 412, 427-28 (6th Cir. 2003) (holding that the district court did not err in imposing sentence based on judicial factfindings to a preponderance of the evidence "where the findings at sentencing operated solely to narrow the 10-years-to-life statutory sentencing range previously triggered by the jury's drug quantity findings"). The en banc Court recently reaffirmed these principles in *United States v. White*,___ F.3d___, No. 05-6596, 2008 WL 5396246, at *2-5 (6th Cir. Dec. 24, 2008).

Thus, the district court did not err in finding White's relevant conduct was more than 500 grams but less than 1.5 kilograms based upon a preponderance of the evidence standard.

### E. Reasonableness of Sentence

White also argues that the 293-month sentence imposed is unreasonable because (1) the district court considered his behavior in the courtroom following the jury's verdict, and (2) his criminal history is overstated. This Court reviews a district court's sentencing determination for reasonableness, using an abuse-of-discretion standard. *United States v. Alexander*, 543 F.3d 819, 821 (6th Cir. 2008). This reasonableness inquiry involves both procedural and substantive components. *Id.* at 821-22.

In assessing procedural reasonableness, we look to see if the district court properly calculated the guidelines range, treated the guidelines as advisory, considered the § 3553(a) factors, and adequately explained the sentence, including an explanation for any variance from the guidelines range. *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008). As for substantive reasonableness, the overall concern is whether the district court imposed a sentence sufficient, but not greater than necessary, to comply with the purposes of the statutory sentencing scheme. 18 U.S.C. § 3553(a); *Alexander*, 543 F.3d at 822. A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider the relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor. *Presley*, 547 F.3d at 530.

The sentence imposed is procedurally reasonable. The district court selected the proper guideline range, treated the guidelines as advisory, selected a sentence at the high end of the advisory guideline range, and considered the § 3553(a) factors.

White's arguments are best characterized as attacks on the substantive reasonableness of his sentence. His sentence is also substantively reasonable. As the district court noted, 18 U.S.C. § 3553(a)(2)(A) directs the court when imposing sentence to consider "the need for the sentence imposed . . . to promote respect for the law." The district court felt that White's conduct in the courtroom upon hearing the jury's verdict was "one in a series of things that demonstrate that you may have a real issue with law and rules."[3] The district court was not required to find White in contempt in order to consider that conduct. Section 3553(a) specifically includes "the history and

[3]The PSR indicated that this conduct did not rise to the level of intimidation under § 3C1.1 of the Sentencing Guidelines but that "it could appropriately be sanctioned by the determination of the sentence within the otherwise applicable guideline range."

characteristics of the defendant" as one of the factors to be considered in imposing sentence. *See also* § 1B1.4 U.S. Sentencing Guidelines Manual (stating that "[t]he court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law"). This ruling was not unreasonable.

The district court rejected White's request for a departure on the basis that his criminal history was overstated because White's criminal history was "rather lengthy" and included numerous convictions which had not been assessed points, and that it displayed "a pattern of disregard for the law." We cannot say that this conclusion was unreasonable. In any event, it is not appealable here. *See United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005); *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002).

Furthermore, the record reflects that the sentence is also procedurally reasonable because the district court considered all of the factors listed in § 3553(a), and White does not seriously contend otherwise.

### F. Crack/Powder Cocaine Ratio

White claims that he is entitled to resentencing due to the recent amendment to the advisory sentencing guidelines reducing the 100 to 1 ratio of crack/powder cocaine to a 20 to 1 ratio for purposes of computing relevant conduct. §2D1.1 U.S. Sentencing Guidelines Manual, app. C. amendment 706 (2007). The amendment was made retroactive effective March 3, 2008.

Remand is unnecessary here because White already received the benefit of the amendment. After determining that White's base offense level was 38, the district court held that it had discretion

to consider the crack/powder cocaine disparity and set White's base offense level at 36.[4]   Under the amended guidelines, more than 500 grams but less than 1.5 kilograms of cocaine base is now an offense level 34.  § 2D1.1(c)(3) U.S. Sentencing Guidelines Manual (Nov. 2007).  The two-level enhancement under § 3B1.1 results in an overall offense level of 36, which is the level the district court used when it imposed White's sentence of 293 months.  Thus, because the sentence imposed has already taken into account the reduction authorized by the recent guideline amendment, no further reduction is warranted.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

[4]Although issued after the district court sentenced White, *Kinbrough v. United States*, 128 S.Ct. 558 (2007) clearly establishes that the 100 to 1 ratio is not mandatory.