NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0806n.06

No. 14-2217

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 10, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PARIS WELLS,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

BEFORE:    SILER, CLAY, and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.** Following his plea of guilty to conspiracy to distribute a mixture or substance containing a detectible amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(C), Defendant Paris Wells appeals from the district court's order sentencing him to 240 months of incarceration. For the reasons set forth below, we **AFFIRM** Defendant's sentence.

BACKGROUND

I.    **Factual History**

This case arises from a conspiracy to distribute heroin between Defendant, his girlfriend Markita Monik Choice, and Ahmed Green. In February 2013, Green was arrested in Grand Rapids, Michigan. At the time of his arrest, Green had approximately 100 grams of heroin in his possession that he intended to distribute to persons located in the Western District of Michigan.

As part of his post-arrest cooperation with law enforcement authorities, Green informed police that he had been securing heroin from Defendant for more than a year by calling Defendant from Grand Rapids to order heroin, driving to Detroit, Michigan, to pick up the heroin from Defendant, and bringing the heroin back to Grand Rapids for distribution.

After conducting a controlled purchase of 100 grams of heroin from Defendant at the direction of federal agents, Green ordered another 100 grams from Defendant on February 27, 2013. Defendant agreed to supply the heroin, and federal agents conducting surveillance at Defendant's residence in Detroit observed Defendant and Choice getting into a vehicle, driving to Defendant's "stash house," and then driving to the location where Defendant had arranged to meet Green. Federal agents stopped and arrested Defendant and Choice on their way to the meeting place. Pursuant to a search warrant, law enforcement officers also searched Defendant's stash house, finding approximately 280 grams of heroin, three hydraulic presses for compressing and repacking heroin, and "other substantial evidence that the defendant was involved in selling heroin." (R. 159, Second Plea Hr'g Tr., PageID #927).

At the sentencing hearing held July 2, 2014, Defendant stated, based on his telephone call with Green, that there was an agreement between Defendant, Choice, and Green for Green to purchase heroin from Defendant on February 27, 2013. Defendant also admitted to selling heroin to Green between late summer 2012 and his arrest on February 27, 2013. Finally, in a proffer statement made on April 12, 2013, Defendant informed law enforcement authorities that he sold heroin to "individuals" in Kalamazoo and Grand Rapids, Michigan, in quantities of 10 to 30 grams.

## II.    Procedural History

On February 26, 2013, Defendant was indicted in the Western District of Michigan on one count of conspiracy to distribute one or more kilograms of heroin in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(A)(i).  On March 20, 2013, Defendant moved to change venue from the Western District of Michigan to the Eastern District of Michigan on the grounds that each of the elements underlying the conspiracy charge against him occurred in the Eastern District.  The government opposed the motion.  Observing that neither Defendant nor the government requested a hearing on Defendant's motion to change venue, the district court denied the motion without oral argument on April 16, 2014.  In its order, the district court observed that for drug conspiracy charges, venue is proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed.  Additionally, the court noted that telephone calls may constitute overt acts in furtherance of a conspiracy.  Based on the government's representations that it would show, at trial, that (1) Defendant supplied heroin to one or more unindicted co-conspirators who distributed the narcotics in the Western District, and (2) Defendant's unindicted co-conspirators placed telephone calls to Defendant from the Western District in order to secure heroin, the court denied Defendant's motion.

The charges in the indictment were punishable by a minimum sentence of 120 months' imprisonment and a maximum sentence of life imprisonment.  However, pursuant to a plea bargain promulgated under Federal Rule of Criminal Procedure 11, Defendant and the government agreed that a sentence of 180 months' imprisonment, along with any fines, costs, or terms of supervised imposed by the district court, was appropriate.  At a change of plea hearing held August 19, 2013, Defendant pleaded guilty to count one of the indictment.  The district

court accepted the guilty plea and told the parties that it would take the plea agreement under advisement. The court also informed Defendant, "If I decide not to accept the . . . plea, you would have the absolute right to withdraw your plea of guilty." (R. 149, First Plea Hr'g Tr., PageID #720). When asked whether he understood this contingency, Defendant responded, "Yes." (*Id.*).

At the sentencing hearing held January 14, 2014, the district court rejected the parties' plea agreement. The court stated that it had "substantial concerns" about the proposed sentence, noting that there was a significant disparity between the presentence officer's advisory guideline calculation provided in the presentence report ("Initial PSR")—360 months to life imprisonment—and the parties' proposed sentence of 180 months. Both the government and Defendant argued that an 180-month sentence was appropriate based on several considerations, including (1) Green's unreliable and inflated estimate of the amount of heroin he purchased from Defendant, (2) Defendant's decision to provide the government with valuable information he had learned from his cellmates while in custody, and (3) the fact that Defendant was already 45-years-old on the day of the hearing.

Unpersuaded, the district court characterized the parties' plea agreement as a "sledgehammer," maintaining that although the United States Sentencing Guidelines are advisory, "they are the starting point for the Court." (R. 155, Omnibus Hr'g Tr., PageID #809). The court also opined that the parties' proposed sentence, "which [wa]s 50 percent lower than the low end of the guideline range," was "a bridge too far." (*Id*. at 809, 814). Ultimately, the court stated:

> I'm not going to accept the . . . plea. That obviously gives the defendant the opportunity to withdraw his plea, if that's what he wants to do. I recognize this is a major decision for him. It could be that in light of the Court's position that

counsel for the government and counsel for the defendant want to rework the agreement here, that's fine with me, take the appropriate amount of time.
But for now, I'm not going to accept the plea.

(*Id.* at 814).

On July 2, 2014, the government filed a superseding felony information charging Defendant with conspiring with Choice, Green, and other, unidentified persons to distribute heroin in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(C). The same day, Defendant pleaded guilty to the superseding information—without a plea agreement—before a magistrate judge. The magistrate judge informed Defendant that the maximum penalty Defendant could receive based on the charge in the superseding information was 240 months' imprisonment. In accordance with the magistrate judge's recommendation, the district judge accepted Defendant's guilty plea on August 4, 2014.

The final presentence report ("Final PSR") was filed September 10, 2014. As in the Initial PSR, the presentence officer scored Defendant's case at Criminal Offense Level 39 and Criminal History Category VI, resulting in an advisory sentencing range of 360 months to life. The district court arrived at the same figures. However, because 21 U.S.C. § 841(b)(1)(C) imposes a maximum penalty of 240 months' imprisonment, the Final PSR recommended a sentence of 240 months.

At the final sentencing hearing held September 18, 2014, the district court acknowledged receipt of Defendant's objections to the Final PSR, sentencing memorandum, and motion for downward variance. Both in writing and at the final sentencing hearing, Defendant raised objections to (1) the quantity of heroin the presentence officer used to calculate his base criminal offense level, (2) the inclusion of a firearm enhancement based on two unloaded firearms stored in the attic of Defendant's "stash house," and (3) the inclusion of an organizer enhancement

based on Defendant's alleged recruitment of Choice into the conspiracy. Defendant also expressed his belief that his criminal history category was overstated because "[a] large number of [the] total criminal history points he ha[d] . . . were received not because of drug dealing and not because of other conduct of that nature, but because he [was] an alcoholic and kept driving and kept ending up in front of judges because of that."[1] (R. 157, Sentencing Hr'g Tr., PageID #865). Based on the government's concessions regarding (1) the difficulty of defending a firearm enhancement based on the two unloaded weapons that Defendant had apparently received in exchange for heroin, and (2) the parties' representations regarding the relatively small amount of heroin at issue in the conspiracy, the district court sustained Defendant's objection to the firearm enhancement and accepted the parties' lower quantity figure for purposes of calculating Defendant's sentence. With regard to the organizer enhancement, however, the government represented that Choice's education and reduced role in the conspiracy indicated that Defendant "clearly recruited [Choice] and brought her into this." (R. 157, Sentencing Hr'g Tr., PageID #868). Ultimately, the district court overruled Defendant's objection to the organizer enhancement and concluded that Defendant's alcohol-related convictions were properly weighted as part of his criminal history category.

Having sustained two of Defendant's objections, the court arrived at an advisory guideline range of 292 to 365 months' imprisonment, but observed that the 240-month maximum sentence under 21 U.S.C. § 841(b)(1)(C) was controlling. The government requested the imposition of a 240-month sentence.

---

[1] Indeed, of the 15 points comprising Defendant's criminal history score, nine arose from incidents in which police officers observed that Defendant was intoxicated, including several convictions for operating a vehicle under the influence of liquor.

In determining whether the 240-month maximum constituted an appropriate sentence, the court noted that "[t]he offense to which the defendant was allowed to plead [pursuant to the superseding information] g[ave] him a very significant benefit to begin with," and that such a benefit "trump[ed] any further consideration of a [downward] variance by the Court" based on Defendant's cooperation with the government. (R. 157, Sentencing Hr'g Tr., Page ID #883–84). The court also found that neither the financial penalty Defendant incurred as a result of forfeiting his drug-related proceeds, nor Defendant's statements that he would miss his children, who were present at the time he and Choice were arrested, warranted a reduced sentence. Focusing on the need to specifically deter Defendant, who had a "long history of criminality," and the need to generally deter other individuals "who might contemplate similar" drug-related activities, the court denied Defendant's motion for a downward variance. (*Id.* at 886). Based on these considerations, the district court concluded that the maximum sentence permitted under 21 U.S.C. § 841(b)(1)(C) was appropriate and sentenced Defendant to 240 months of incarceration. Defendant timely appealed.

## DISCUSSION

Defendant seeks reversal of his sentence on three separate grounds. First, Defendant asserts that the district court abused its discretion by denying his pre-sentence motion to change venue. Second, Defendant argues that the district court improperly rejected his plea agreement by failing to comply with the procedures set out in Federal Rule of Criminal Procedure 11(c)(5). Third, Defendant contends that his 240-month sentence is unreasonable because the district court failed to adequately consider the sentencing factors under 18 U.S.C. § 3553(a). We address each of these arguments in turn.

**I.   Defendant's Motion for Change of Venue**

We review the grant or denial of a motion to change venue for abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005); *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991).

The government asserts that Defendant's venue challenge must fail because Defendant waived all non-jurisdictional errors, including improper venue, when he pleaded guilty to the superseding information. *Appellee Br.* at 10.  Indeed, this Court has held that "[a] voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings." *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) (citation omitted).  Venue is a non-jurisdictional issue that can be waived by virtue of a guilty plea.  *United States v. Micciche*, 165 F. App'x 379, 386 (6th Cir. 2006) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Here, Defendant pleaded guilty to the charge brought in the superseding information. Although Defendant could have affirmatively preserved the venue issue when he entered his guilty plea, *Ormsby*, 252 F.3d at 848, there is no indication that he did so.  Similarly, even though we have indicated that a defendant cannot waive his venue objection where he lacks notice of a venue defect, *United States v. Mobley*, 618 F.3d 539, 546 n.4 (6th Cir. 2010), because Defendant filed a motion to change venue, there is no support for a finding that Defendant lacked notice.  Accordingly, we conclude that Defendant waived his venue objection when he pleaded guilty to the superseding information.

Defendant's venue challenge also fails on the merits.  Article III of the United States Constitution provides, in pertinent part:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

U.S. Const. art. III, § 2, cl. 3. Thus, the Constitution guarantees that a defendant shall be tried in the state and district in which the alleged offense was committed. *United States v. Williams*, 274 F.3d 1079, 1083 (6th Cir. 2001); *see also* Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed.").

"[C]onspiracy is a continuing offense." *Smith v. United States*, 133 S. Ct. 714, 719 (2013).

> Accordingly, the determination of venue is governed by the "continuing offense" statute, which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed."

*United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003) (quoting 18 U.S.C. § 3237(a)); *see also United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001) ("For drug conspiracies, venue is proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed."); *Turner*, 936 F.2d at 226 (stating that because conspiracy to distribute narcotics is a continuous crime, venue is proper "in any district along the way") (citations omitted). "A conspiracy defendant need not have entered the district so long as this standard is met." *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984); *see also Zidell*, 323 F.3d at 422 ("To satisfy the terms of [18 U.S.C. § 3237(a)], it is not essential that the defendant ever have been physically present in the district in question, so long as 'the offense continued into' this district.").

Since venue may be had in more than one district, *Williams*, 274 F.3d at 1084, "long-standing precedent in this circuit applies the substantial contacts test to determine appropriate venue." *Brika*, 416 F.3d at 527. "That test takes into account a number of factors— the site of the defendant's act, the elements and nature of the crime, the locus of the effect of the

criminal conduct, and the suitability of each district for accurate fact finding." *Id.* (citation and internal quotation marks omitted). The government must show that venue is proper by a preponderance of the evidence. *United States v. Kuehne*, 547 F.3d 667, 677 (6th Cir. 2008).

With regard to the first substantial contacts factor—the site of Defendant's acts—the record demonstrates that much of Defendant's conduct related to the conspiracy to distribute heroin, including Defendant's phone calls to Green, as well as Defendant's efforts to pack and deliver heroin, occurred in the Eastern District. However, in his proffer statement, Defendant also admitted to selling heroin in quantities of 10 to 30 grams to individuals in Kalamazoo and Grand Rapids, both cities in the Western District. Further, Defendant made phone calls to Green, while Green was in Grand Rapids, to arrange sales.

In terms of the second factor, the elements and nature of the crime, a conviction for a drug conspiracy under 21 U.S.C. § 846 requires "(1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009). At the plea hearing, Defendant admitted that by virtue of his telephone call with Green in February 2013, there was an agreement between Defendant, Choice, and Green for Green to purchase heroin from Defendant on February 27, 2013. Defendant also stated on the record that between summer 2012 and February 2013, he, Choice, and Green had an agreement for Green to purchase heroin from Defendant, Defendant sold heroin to Green, and Defendant knew Green intended to distribute the heroin to other people. Finally, although Defendant is correct that a government informant or agent cannot be a co-conspirator, *Williams*, 274 F.3d at 1084, this assertion is of little import on the facts of this case because Green was not acting as a criminal informant until February 2013, and his participation during this month was merely the continuation of an ongoing conspiracy

between Defendant, Choice, and Green that had been in progress since at least summer 2012. Where a defendant's co-conspirator "commit[s] an overt act furthering the conspiracy within [a] district," venue may lie in that district. *United States v. Character*, 76 F. App'x 690, 695 (6th Cir. 2003). On this record, it is clear that Green—as part of the conspiracy with Defendant, and prior to his enlistment as a criminal informant—committed overt acts in furtherance of the conspiracy to distribute heroin, such as making phone calls and sales, in the Western District of Michigan.

The third substantial contacts factor examines the effects of the defendant's criminal conduct. Because Defendant sold heroin to individuals in Grand Rapids and Kalamazoo, and sold heroin to Green to be distributed in these cities, the detrimental effects of his criminal conduct were likely felt in the Western District. *Id.* at 528; *Zidell*, 323 F.3d at 423. Finally, as to the fourth factor, because the heroin sold by Defendant was primarily distributed to users in the Western District, the Western District is a suitable district for carrying out relevant fact-finding. *See Brika*, 416 F.3d at 528 (finding that the Southern District of Ohio was a suitable district for carrying out fact-finding where law enforcement officials recorded the defendant's allegedly unlawful communications, made from his home, in that district); *Williams*, 274 F.3d at 1085 (indicating that a venue is suitable for fact-finding where the offense and its elements occurred in that district, and relevant witnesses are available there). Based on the foregoing, we find that the Government has demonstrated, by a preponderance of the evidence, that Defendant had substantial contacts with the Western District and therefore venue was proper in that district.

## II. The District Court's Compliance with Rule 11(c)(5)

Defendant also challenges the district court's rejection of the parties' plea agreement, which sought a sentence of 180 months, on the grounds that the district court failed to comply

with the requirements set out in Rule 11(c)(5).  Because Defendant did not object at the time the district court rejected the Rule 11 plea agreement, we review for plain error.  *United States v. Anderson*, 467 F. App'x 474, 481 (6th Cir. 2012); *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005).

"[The] defendant bears the burden of proof on plain error review," *Murdock*, 398 F.3d at 496, and must show that "1) an error occurred in the district court; 2) the error was plain, i.e., obvious or clear; 3) the error affected defendant's substantial rights; and 4) the adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Anderson*, 467 F. App'x at 481.  The four elements of plain error are distinct and each must be shown in order for the defendant to prevail.  *United States v. Sharp*, 442 F.3d 946, 949–50 (6th Cir. 2006).

Any variance from the requirements of Rule 11 that does not affect substantial rights constitutes "harmless error."  Fed. R. Crim. P. 11(h).  Accordingly, this Court has held that "'substantial compliance' rather than 'strict compliance' . . . is sufficient to satisfy Rule 11's requirements."  *United States v. DeBusk*, 976 F.2d 300, 306 (6th Cir. 1992).  "[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."  *United States v. Vonn*, 535 U.S. 55, 59 (2002).

"[A] defendant has no absolute right to have a guilty plea accepted" by the district court. *United States v. White*, 308 F. App'x 910, 915 (6th Cir. 2009) (citation and internal quotation marks omitted).  However, "a court must exercise sound discretion in determining whether or not to reject a plea.  Thus, a defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea." *Id.*  Where a defendant pleads guilty pursuant to a Rule 11(c)(1)(C) plea agreement, the guidelines "require the district judge to give due

consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011).

Defendant argues that the court erred when it rejected the proposed 180-month sentence contained in the plea agreement because, contrary to the procedures required under Rule 11(c)(5), the court did not "personally address" Defendant to explain that (1) the court was not required to follow the plea agreement, (2) Defendant had the right to withdraw his plea, and (3) "if [Defendant] did not withdraw his plea the district court could dispose of his case less favorably than the plea agreement contemplated." *Corrected Appellant's Br.* at 13–16. By virtue of this alleged error, Defendant argues, he lacked sufficient information to make a "knowing and intelligent decision" regarding whether to maintain his guilty plea in light of the possible outcomes. *Id.* at 16. Further, this error affected the fairness of Defendant's case because "the district court rejected [the] plea agreement based solely on the offense level and criminal history as calculated in the PSR . . . without consider[ing] . . . argument of counsel regarding downward departures or objections that would normally affect a defendant's final guideline calculation." *Id.* at 16. These arguments are unpersuasive.

After listening to the parties' allocution regarding the purported appropriateness of an 180-month sentence, the district court reiterated its concerns, expressed at the beginning of the hearing, that the proposed sentence was only 50 percent of the lower end of the advisory guideline range—360 months to life imprisonment. The court concluded that such a sentence was "a bridge too far" and informed the parties that (1) it would not accept the plea, (2) Defendant "obviously" had the opportunity to withdraw his plea if he so chose, and (3) the court would consider a reworked agreement from the parties if they elected to submit one.

Under Rule 11, if a district court rejects a plea agreement promulgated pursuant to Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court:

(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5). Here, the parties dispute what is meant by Rule 11's requirement that the court "advise the defendant personally" regarding (1) the court's ability to reject the plea agreement, (2) the defendant's right to withdraw his guilty plea, and (3) the court's prerogative to dispose of the case less favorably than contemplated in the plea agreement if the plea is not withdrawn. Defendant apparently takes issue with the relative brevity of the court's conclusion that it would not accept the plea agreement as well as the court's alleged failure to "personally address" defendant when conveying this decision, *see Corrected Appellant's Br.* at 15, while the government asserts that despite the court's decision not to use the second-person pronoun "you" in rejecting the plea agreement, "[t]he district court provided all of the information required by Rule 11(c)(5)." *Appellee's Br.* at 16, 19.

As indicated, we review plea proceedings conducted pursuant to Rule 11 for substantial compliance with the Rule. *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004); *see also DeBusk*, 976 F.2d at 304, 306. "[T]he substantial compliance standard demands that a variance from Rule 11's requirements 'not affect substantial rights.'" *DeBusk*, 976 F.2d at 306.

The parties do not cite, and we have not found, precedent in this Circuit elucidating the exact requirements imposed by Rule 11(c)(5)'s directive that a district court "advise the defendant personally" regarding certain issues following the rejection of a plea agreement. However, the following extra-jurisdictional cases are instructive in delineating the scope of this

requirement. In the Eighth Circuit case *United States v. Young*, the defendant alleged that the district court violated Rule 11(c)(1) by failing to personally advise him, at the time of the plea hearing, as to the maximum and minimum penalties associated with two of the charges against him. 927 F.2d 1060, 1061–62 (8th Cir. 1991). The majority in that case concluded that although the district court did not personally advise the defendant of the statutory maximum and minimum sentences applicable to the charges, it was sufficient that (1) the prosecution, rather than the court, advised him of those parameters at the plea hearing and (2) the defendant expressed his affirmative understanding of the prosecutor's statements. *Id.* at 1062–63. In *United States v. Lomas*, the defendant argued that the district court plainly erred when it rejected his plea agreement because it failed to advise him, pursuant to Rule 11(c)(5)(C), that if he did not withdraw his guilty plea, the disposition of his case might be less favorable to him than that contemplated in the plea agreement. 483 F. App'x 324, 325 (9th Cir. 2012). The Ninth Circuit rejected this argument and found that there was no plain error because "this omission did not have any material effect on [the defendant's] substantial rights." *Id.* Specifically, because the record made clear that the district court rejected the plea agreement due to a miscalculation contained in the presentencing report that subjected the defendant to an inappropriately low sentencing range, the Ninth Circuit concluded that the defendant "knew the district court's rejection of his plea agreement would mean the court would likely subject him to a higher sentencing range." *Id.*

Here, the district court concluded that it would not accept the plea due to the significant disparity between the proposed sentence and the advisory guideline range and stated that Defendant had the opportunity to withdraw his plea. Further, during the prior plea hearing, the court's colloquy with Defendant proceeded as follows:

THE COURT: If I decide not to accept the . . . plea, you would have the absolute right to withdraw your plea of guilty. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Do you have any questions about that?
THE DEFENDANT: No.
THE COURT [addressing counsel for the government and counsel for Defendant, respectively]: Mr. Courtade, Mr. Kent, have I adequately covered that?
MR. COURTADE: Yes, Your Honor, you have.
MR. KENT: Yes.

(R. 149, First Plea Hr'g, PageID #720–21). Similarly, with regard to any sentence imposed following acceptance of Defendant's guilty plea, the court advised Defendant that:

THE COURT: Those guideline ranges are advisory to the Court. In other words, I can go above them, I can go below them, I can stay within the guideline range. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Now, in this case, if I agree to the . . . plea, I'll be giving you 15 years [*i.e.*, 180 months]. Do you understand?
THE DEFENDANT: Yes.
THE COURT: The Court would be obligated to consider possible departures upward, possible departures downward, and variances from the sentencing guidelines as well. Do you understand that?
THE DEFENDANT: Yes.

(*Id.* at 724). The text of the parties' plea agreement also acknowledged the court's ability to "impose a sentence within, above, or below the Guideline range." (R. 75, Plea Agreement, PageID #263).

The district court reiterated its concerns about the disparity between the 180-month sentence proposed by the parties and the range of 360 months to life set out under the guidelines throughout the hearing. In this vein, the court referred to the plea agreement as a "sledgehammer," noted that it "reduce[d] the sentence by 50 percent off the low end" of the guidelines range, and asserted that although the guidelines are advisory, they provided a starting point for the court's analysis. (R. 155, Omnibus Hr'g Tr., PageID #809). Based on the foregoing, we find that the district court's statements throughout the hearing made clear, as the

government contends, that the court rejected the plea agreement because it concluded that a longer sentence that better approximated the range set out in the guidelines was more appropriate.

One of the elements Defendant must prove to show plain error is that "the error affected [his] substantial rights." *Anderson*, 467 F. App'x at 481. "[A] defendant can prove that his substantial rights are affected when he shows that the district court failed to comply with the key safeguard in place to protect those rights and that there was no functional substitute for that safeguard." *Murdock*, 398 F.3d at 497. Here, even if Defendant could show that the district court clearly erred at the sentencing hearing by failing to "advise the defendant personally" regarding certain information required under Rule 11, we find that Defendant cannot show that this error affected his substantial rights because the district court's extensive discussion with Defendant at the plea hearing provided a "functional substitute" for any safeguards that may have been omitted at the sentencing hearing. *Id.*; *see also Young*, 927 F.2d at 1062–63. Thus, we find no plain error on this basis.[2]

Defendant also challenges the district court's failure to personally inform him that failure to withdraw his guilty plea after the court's rejection of the plea agreement would allow the district court to impose a less favorable, *i.e.* lengthier, sentence than that contemplated by the plea agreement. However, Defendant, like the defendant in *Lomas*, cannot show that this

---

[2] As stated above, Rule 11(c)(5)(C) instructs courts to "advise the defendant personally" that (1) the court is not required to follow a plea agreement and (2) the court may dispose of a case less favorably than contemplated by the plea agreement if the defendant does not withdraw his guilty plea. We are careful to note that our holding today does not seek to undermine this directive, and best practices for creating a clear record would likely entail a colloquy between the court and the defendant in which the court makes clear that it is addressing the defendant directly—rather than speaking to the attorneys—when conveying the information required under the Rule.

omission affected his substantial rights. *See* 483 F. App'x at 325. In this case, the court made clear that it was rejecting the plea agreement because it found that the proposed sentence contained within was too short in light of the advisory guideline range. Further, because Defendant elected to withdraw his guilty plea, the district court's purported failure to warn Defendant about the potential adverse consequences of *failing* to withdraw the plea had no effect on his substantial rights.

## III. Procedural and Substantive Reasonableness of the Sentence

Finally, Defendant attacks the reasonableness of the 240-month sentence imposed by the district court. As a general matter, "[w]e review a sentence imposed by the district court for procedural and substantive reasonableness under an abuse-of-discretion standard." *United States v. Brown*, 372 F. App'x 643, 645 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 52 (2007)). However, "[w]here a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). Because Defendant responded in the negative to the district court's inquiry regarding whether he had any legal objections to the 240-month sentence, plain error review applies to Defendant's procedural reasonableness claim. *Wallace*, 597 F.3d at 802; *United States v. Pritchard*, 392 F. App'x 433, 437 (6th Cir. 2010) ("Procedural objections must be explicitly raised in the district court in order to preserve them for reasonableness review under an abuse-of-discretion standard, and if they are not properly preserved then the sentence is reviewed for plain error."). Defendant's substantive reasonableness claim is reviewed for abuse of discretion. *United States v. Solano-Rosales*, 781 F.3d 345, 355–56 (6th Cir. 2015).

### a. The Sentence was Procedurally Reasonable

When reviewing for procedural reasonableness, we examine whether the district court committed a significant procedural error, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. "[A] sentence may be procedurally unreasonable if the district court did not consider the applicable Guidelines range or neglected to consider the factors set forth in 18 U.S.C. § 3553(a), and instead simply chose a sentence that the judge deemed appropriate." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008). Overall, we require that the district court "provide an articulation of the reasons [it] reached the sentence ultimately imposed," that "allow[s] for meaningful appellate review." *Solano-Rosales*, 781 F.3d at 351 (citations and internal quotation marks omitted).

Defendant argues that "[t]he sentence in this case was unreasonable because the trial court imposed [the] maximum sentence . . . without considering the factors under § 3553(a) in determining whether that sentence was appropriate." *Corrected Appellant's Br.* at 16. This argument is belied by the record.

As part of his allocution, Defendant argued that the court should impose a sentence shorter than the 240-month maximum based on his (1) allegedly inflated criminal history category, (2) cooperation with the government, (3) acceptance of a "significant financial penalty," (4) remorse for his crimes, (5) relationship with his children, and (6) age.[3] Defendant

---

[3] Defendant was 46 at the time of the sentencing hearing.

also expressed his desire to "take full responsibility for [his] part in the conspiracy." (R. 157, Sentencing Hr'g Tr., PageID #878).

Prior to imposing the sentence at issue, the district court explicitly recognized its obligation to "make an individualized assessment" based on the factors enumerated in 18 U.S.C. § 3553(a). (*Id.* at 880–81). The court discussed Defendant's significant level of familial and communal support, indicated that it did not doubt that Defendant cared about his children despite his arrest in their presence, and characterized Defendant's decision to generate income through drug distribution—rather than some other, legal means—as a "tragedy" in light of Defendant's intelligence and history as a small business owner. (*Id.* at 881–82, 885). The court also "accept[ed] [Defendant's] expression of remorse," but expounded that crimes involving heroin are "very serious" due to the drug's "devastating effect" in communities. (*Id.* at 883).

Twice during the hearing, the court indicated that although Defendant's alcohol-related charges were arguably less serious than other crimes, they were "properly calibrate[d]" under the guidelines and did not warrant a lower criminal history category.[4] (*Id.* at 871, 884–85). Further, the court noted that the charge contained in the superseding information, which imposed a 240-month maximum absent from the original charge, "g[ave] him [a] very significant benefit," (*id.* at 883), in that he no longer faced the prospect of life imprisonment under 21 U.S.C. § 841(b)(1)(A)(i). Finally, the court found that any sentence imposed should both specifically deter Defendant and generally deter persons who might consider distributing narcotics. The court concluded that an advisory guideline sentence was appropriate because it would "reflect

---

[4] The court also noted that even if Defendant were classified as Criminal History Category V, rather than Criminal History Category VI, the advisory guideline range would still exceed the statutory maximum under 21 U.S.C. § 841(b)(1)(C).

the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." (*Id.*).

The district court's explanation for its imposition of a 240-month sentence shows that the court considered both the applicable guidelines range and the § 3553(a) factors. *See Vowell*, 516 F.3d at 510. Additionally, the court acknowledged the advisory, rather than mandatory, nature of the guidelines, *see Gall*, 552 U.S. at 51, and addressed Defendant's arguments for a downward variance in a manner that demonstrated that the court listened to Defendant's contentions, considered the supporting evidence, and took Defendant's circumstances into account. *United States v. Douglas*, 563 F. App'x 371, 375 (6th Cir. 2014). On this record, we find that the district court's articulation of its reasons for imposing the 240-month sentence allows for meaningful appellate review, *Solano-Rosales*, 781 F.3d at 351, and conclude that the sentence was procedurally reasonable.

### b. The Sentence was Substantively Reasonable

"[R]eview of a sentence for substantive reasonableness 'requires inquiry into . . . the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination.'" *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012). Under 18 U.S.C. § 3553(a), the sentencing court must:

> [I]mpose a sentence sufficient, but not greater than necessary, . . .
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). The court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available,"

the applicable sentencing range under the guidelines, pertinent policy statements issued by Congress or the Sentencing Commission, the need to avoid unwarranted sentence disparities among similarly situated defendants, and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The substantive reasonableness inquiry requires this Court to examine the totality of the circumstances, including whether and to what extent the sentence imposed by the district court varies from the guidelines range. *Cochrane*, 702 F.3d at 345. "A sentence that falls within [the] defendant's Guidelines range is accorded a presumption of reasonableness." *Douglas*, 563 F. App'x at 376.

Defendant's substantive unreasonableness arguments closely track his procedural unreasonableness arguments, and we reject them for the same reasons.[5] The district court explicitly accounted for the maximum penalty dictated by 21 U.S.C. § 841(b)(1)(C) and evaluated the relevant § 3553(a) factors. *Cochrane*, 702 F.3d at 345. Further, sentences that fall within the advisory guidelines range are presumptively reasonable, and Defendant has failed to proffer evidence or argument sufficient to overcome this presumption. *Id.*; *Douglas*, 563 F. App'x at 376. Finally, although it was theoretically possible for the district court to impose a shorter sentence that was also substantively reasonable on the facts of this case, that does not undermine or otherwise contradict a conclusion that the sentence here was reasonable. *United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 2009) ("Regardless of whether we would have imposed the same sentence, we must afford due deference to the district court's decision to

---

[5] Specifically, Defendant asserts that "the trial court failed to provide sufficient evidence on the record that it considered the § 3553(a) factors in fashioning [Defendant's] maximum sentence" because it "provided only a brief statement of the § 3553 factors." *Corrected Appellant's Br.* at 17.

determine the appropriate length of the defendant's sentence, so long as it is justified in light of the relevant § 3553(a) factors."). We conclude that the 240-month sentence imposed by the district court was not substantively unreasonable.

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court in full.