NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0532n.06

Case No. 25-3059

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 20, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CHRISTOPHER THOMAS LANIER, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: McKEAGUE, GRIFFIN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Christopher Lanier pleaded guilty to two child-pornography offenses under a plea agreement that would have required the district court to impose a prison sentence between 292 and 365 months. The district court, believing the agreed-upon sentencing range did not fully account for Lanier's conduct, rejected the plea agreement and sentenced Lanier to 420 months' imprisonment. Lanier challenges the rejection of the plea agreement. We affirm.

**I.**

Christopher Lanier repeatedly recorded himself sexually abusing his one-year-old relative. He sent the videos to his long-distance girlfriend, H.J. In exchange, Lanier asked H.J. to film herself sexually abusing her children. He encouraged H.J. to rape her youngest daughter.

Lanier directed H.J. to download an encrypted communication service to conceal their messages. In total, Lanier produced and sent eleven videos and three pictures of child sexual abuse

material to H.J.  In return, Lanier received sixteen videos and sixteen images of child sexual abuse material from H.J.

A grand jury indicted Lanier for: (1) receiving and distributing visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) ("Count 1"); (2) sexually exploiting children in violation of 18 U.S.C. § 2251(a) ("Count 2"); and (3) possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) ("Count 3").  Lanier pleaded guilty to Counts 1 and 2 in exchange for the government's agreement that he should receive a sentence of imprisonment within the range of 292 to 365 months.  The government also agreed to request dismissal of Count 3.

Lanier entered into a Rule 11(c)(1)(C) plea agreement with the government, which the district court could either accept or reject.  At the change-of-plea hearing, the district court reviewed the plea agreement with Lanier.  But it deferred a decision on whether to accept the plea agreement until it could review the presentence investigation report ("PSR").

The district court reviewed the PSR before the sentencing hearing.  The PSR included detailed excerpts from conversations between Lanier and H.J., and it described the child sexual abuse material they exchanged.  The PSR calculated an advisory Sentencing Guidelines range of 600 months' imprisonment, the statutory maximum the court could impose.

The case proceeded to sentencing.  At the hearing, the court expressed its concern that the plea agreement's recommended sentencing range was substantially below the advisory Guidelines range and thus failed to account for the severity of Lanier's offense conduct.  It twice asked the parties to justify the agreement.  Lanier declined to do so.  Because the court could not reconcile the plea agreement's recommended sentencing range with the seriousness of the offense and the advisory Guidelines range, it rejected the plea agreement.

The district court then informed Lanier of his right to withdraw his guilty plea. The court warned Lanier that if he chose to maintain his guilty plea, it could impose a harsher sentence than the one agreed to by the parties. After conferring with his counsel, Lanier declined to withdraw his guilty plea and requested to proceed with sentencing.

The district court confirmed that Lanier's advisory Guidelines range was 600 months' imprisonment. After considering the various sentencing factors, the court imposed a below-Guidelines 420-month prison sentence.

Lanier appeals the district court's rejection of the Rule 11(c)(1)(C) plea agreement.

**II.**

We generally review a district court's decision to reject a plea agreement for an abuse of discretion. *United States v. Doggart*, 906 F.3d 506, 509 (6th Cir. 2018). But if a defendant fails to object when the district court rejects the plea agreement, we review for plain error. *United States v. Wells*, 631 F. App'x 408, 415 (6th Cir. 2015). To establish plain error, a defendant must show that: (1) there was an error, (2) the error was "plain," (3) the error affected his "substantial rights," and (4) "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation modified).

**III.**

Federal Rule of Criminal Procedure 11 governs the use, acceptance, and rejection of pleas and plea agreements in federal court. This case implicates Rule 11's plea-agreement procedure.

The government and a defendant can "reach a plea agreement." Fed. R. Crim. P. 11(c)(1). A plea agreement made under Rule 11(c)(1)(C) allows the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). If the district court accepts the Rule 11(c)(1)(C) plea agreement, then the parties' agreed-upon

sentence or sentencing range "binds the court." *Id.* But the district court can reject a Rule 11(c)(1)(C) plea agreement if it: (1) informs the parties of its intentions, (2) advises the defendant that it "is not required to follow the plea agreement," (3) gives the defendant an opportunity to withdraw his guilty plea, and (4) cautions the defendant that it could impose a sentence harsher than contemplated by the plea agreement if the defendant does not withdraw his guilty plea. Fed. R. Crim. P. 11(c)(5).

District courts have broad discretion in deciding whether to accept or reject guilty pleas and plea agreements. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). So even when the government and the defendant agree to a sentence or sentencing range in a Rule 11(c)(1)(C) plea agreement, the district court has an "independent obligation" to ensure that the recommended sentence is "sufficient . . . to comply with the purposes of federal sentencing." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion) (citation modified). To ensure the parties' agreed-upon sentence is sufficient, district courts "must consider the Sentencing Guidelines." *Hughes v. United States*, 584 U.S. 675, 682 (2018). It may not accept the agreement unless "the agreed sentence is within the applicable guideline range," or it is outside that range "for justifiable reasons" that are specifically set out. *Id.* (quoting U.S.S.G. § 6B1.2(c)).

If a district court rejects a plea agreement, "it must explain why." *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022). And its explanation must be "sound," *United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018) (quotation omitted), not "arbitrar[y], invidious[], or pursuant to a categorical policy," *In re United States*, 32 F.4th at 594 (citation modified). The district court has a sound reason to reject a plea agreement if the agreed-upon sentence does not "adequately reflect the seriousness of the offense." *Id.* This requires the district court to conduct an

"individualized assessment" of the facts before it. *Id.* at 595. To conduct this assessment, the court should first review the PSR. *Cota-Luna*, 891 F.3d at 647.

At sentencing, the district court rejected Lanier's Rule 11(c)(1)(C) plea agreement with the government and offered Lanier the opportunity to withdraw his guilty plea. Lanier did not object to the rejection of the plea agreement, nor did he withdraw his guilty plea. So we review the district court's decision to reject the plea agreement for plain error. We find none.

Lanier argues that the district court erred when it rejected his plea agreement without explaining its reasoning. We disagree. The district court explained why it rejected the plea agreement. It weighed three "competing" factors: (1) the seriousness of the offense conduct, (2) the parties made an arm's-length agreement, and (3) the victim's mother supported the agreement. R. 52, PageID 797–98. Ultimately, the court concluded that the seriousness of Lanier's conduct outweighed the other factors, so it rejected the plea agreement.

In reaching this conclusion, the district court considered the circumstances of the case. It reviewed the plea agreement, the PSR, victim impact statements, and the parties' respective sentencing memoranda. The district court noted that the plea agreement's 292-to-365-month sentencing range was substantially below the 600-month advisory Guidelines range. So it asked the parties to "justify" the plea agreement "[i]n light of the seriousness of the offense." *Id.* at 795–96. The government attempted to do so; Lanier did not.

The district court then took a brief recess to "decide whether to accept the plea agreement or not in light of the seriousness of the offense conduct." *Id.* at 797. When it resumed the hearing, the court concluded that it was "not able to accept the plea agreement in this case" unless the parties could "provide more information" as to why their recommended range was sufficient considering the seriousness of the offense conduct. *Id.* at 798. Neither party offered more

information, so the court rejected the plea agreement. In doing so, the court fulfilled its "obligation" to ensure that the sentence was sufficient "in light of the Guidelines and other § 3553(a) factors." *Freeman*, 564 U.S. at 529.

Lanier pushes back, arguing that the district court did not "explain how the seriousness of the offense impacted its decision to reject the agreement." D. 37 at p.17. But he is mistaken. As the court explained, in light of the seriousness of the offense conduct, it needed more information from the parties to justify a sentence substantially below the advisory Guidelines range. Before it could accept the agreement, the court needed to justify any disparities between the recommended sentence and the advisory Guidelines sentence. *See Hughes*, 584 U.S. at 682. The court could not do so, and neither could the parties.

Lanier contends that the government offered two reasons for accepting the agreement. First, data from the Sentencing Commission shows that offenders with the same Guidelines profile as Lanier received an average sentence of 348 months' imprisonment, and the median sentence was 360 months' imprisonment. And second, the victim's mother agreed to the recommended range. But the court found that neither of these justifications accounted for the seriousness of Lanier's conduct.

The district court distinguished Lanier from the typical offender because his conduct "goes beyond that in a more typical child pornography case." R. 52, PageID 826. Lanier sexually abused his one-year-old relative, recorded the abuse, and sent the recordings to H.J. with the expectation that she would reciprocate by sending videos of herself sexually abusing her own children. He used an encrypted messaging service to evade detection. Lanier acknowledges that his conduct was "egregious." *Id.* at 817. Based on Lanier's conduct, the court could not justify a sentence within the parties' agreed range, even though that range accounted for the average sentence for

child sex offenders with a similar background, because Lanier was not the average child sex offender.

As for victim's mother being in accord with the plea agreement, the court also asked her if she wished to speak in support of the recommended sentencing range. Like Lanier, she chose not to do so.

The district court did not plainly err when it offered a "case-specific" reason for rejecting the plea agreement—the agreement recommended a sentencing range substantially below the advisory Guidelines range. *See In re United States*, 32 F.4th at 595 (finding error where we could not "ascertain any case-specific reason why the district court rejected the plea agreement"). That the agreement failed to "reflect the seriousness of the offense" was a sound reason for the court to reject it. *Id.* at 594. The court did not have an arbitrary policy of rejecting Rule 11(c)(1)(C) agreements. Indeed, it noted that this was the first time it rejected this kind of plea agreement because it failed to sufficiently account for the severity of the offense conduct.

## IV.

For these reasons, we **AFFIRM** the district court's judgment.